# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 18-30652

United States Court of Appeals
Fifth Circuit

**FILED**

February 24, 2020

Lyle W. Cayce
Clerk

JAMES A. LATIOLAIS,

       Plaintiff – Appellee

v.

HUNTINGTON INGALLS, INCORPORATED, formerly known as Northrop Grumman Shipbuilding, Incorporated, formerly known as Northrop Grumman Ship Systems, Incorporated, formerly known as Avondale Industries, Incorporated,

       Defendant – Appellant

Appeal from the United States District Court
for the Eastern District of Louisiana

## ON PETITION FOR REHEARING EN BANC

Before OWEN, Chief Judge, and JONES, SMITH, STEWART, DENNIS, ELROD, SOUTHWICK, HAYNES, GRAVES, HIGGINSON, WILLETT, HO, DUNCAN, and OLDHAM, Circuit Judges.[1]

EDITH H. JONES, Circuit Judge:

This appeal was reconsidered en banc because Fifth Circuit precedents concerning the scope of the revised Federal Officer Removal Statute, 28 U.S.C. § 1442(a)(1), were extraordinarily confused. *See Latiolais v. Huntington Ingalls, Inc.*, 918 F.3d 406, 412–13 (5th Cir. 2019). Having reconsidered, we

---

[1] Judges Dennis and Haynes concur in the judgment only. Judges Costa and Engelhardt are recused.

No. 18-30652

strip away the confusion, align with sister circuits, and rely on the plain language of the statute, as broadened in 2011. As a result, Avondale[2] was entitled to remove this negligence case filed by a former Navy machinist because of his exposure to asbestos while the Navy's ship was being repaired at the Avondale shipyard under a federal contract. We VACATE the contrary district court judgment and REMAND for further proceedings in federal court.

## BACKGROUND AND PROCEDURE

During the 1960s and 1970s, the United States Navy contracted with the Defendant-Appellant, Avondale, to build and refurbish naval vessels. Most of the contracts in the 1960s required asbestos for thermal insulation. According to Avondale's expert, a marine engineer and naval historian, the contracts obliged Avondale "to comply with government plans and specifications, and the federal government had the right to and did exercise supervision over the process to ensure such compliance."

The Plaintiff-Appellee, James Latiolais, then a machinist aboard the USS *Tappahannock*, was exposed to asbestos while his ship underwent refurbishing at Avondale for several months. In 2017, Latiolais was diagnosed with mesothelioma. He died in October 2017.[3]

Latiolais sued Avondale in Louisiana state court for causing him to contract mesothelioma. He asserted, *inter alia*, that Avondale negligently failed to warn him about asbestos hazards and failed to provide adequate safety equipment. He did not allege strict liability claims against Avondale.

---

[2] The Defendant-Appellant has borne many names, including Huntington Ingalls, Northrop Grumman Shipbuilding, and Avondale Industries. Because the parties refer to the Defendant-Appellant as Avondale, the court does the same.

[3] Although Latiolais died shortly after filing his petition in Louisiana state court, no party argues that his death affects any issue in this appeal.

No. 18-30652

Avondale removed the case to federal court under 28 U.S.C. § 1442(a)(1). Latiolais sought remand, however, and the district court granted the motion. Observing this court's "causal nexus" requirement for federal officer removal, the district court asked whether the United States or any of its officials controlled Avondale's safety practices. The court found no such control and concluded that removal under § 1442(a)(1) was improper. Avondale timely appealed.

## STANDARD OF REVIEW

Although an order remanding a case to state court is not generally reviewable, "an order remanding a case to the State court from which it was removed pursuant to section 1442 or 1443 of this title shall be reviewable by appeal or otherwise." 28 U.S.C. § 1447(d). "We review the district court's remand order de novo, 'without a thumb on the remand side of the scale.'" *Legendre v. Huntington Ingalls, Inc.*, 885 F.3d 398, 400 (5th Cir. 2018) (quoting *Savoie v. Huntington Ingalls, Inc.*, 817 F.3d 457, 462 (5th Cir. 2016)).

## DISCUSSION

As amended in 2011 and still effective, the Federal Officer Removal Statute states in pertinent part:

> (a) A civil action or criminal prosecution that is commenced in a State court and that is against or directed to any of the following may be removed by them to the district court of the United States . . . :
>> (1) The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office . . . .

28 U.S.C. § 1442(a)(1) (2018).

Some version of this statute has been in effect since 1815. *Watson v. Philip Morris Cos.*, 551 U.S. 142, 147–49, 127 S. Ct. 2301, 2305 (2007). At first, Congress authorized only some federal officials sued in connection with their

3

No. 18-30652

official duties to seek a federal forum rather than face possibly prejudicial resolution of disputes in state courts. *Willingham v. Morgan*, 395 U.S. 402, 405, 89 S. Ct. 1813, 1815 (1969). Over time, though, Congress has broadened the removal statute repeatedly until it reached the coverage quoted above. *See Watson*, 551 U.S. at 147–49, 127 S. Ct. at 2305; 28 U.S.C.A. § 1442 (West).

Federal officers may remove cases to federal court that ordinary federal question removal would not reach. In particular, section 1442(a) permits an officer to remove a case even if no federal question is raised in the well-pleaded complaint, so long as the officer asserts a federal defense in the response. As the Supreme Court has explained, "the raising of a federal question in the officer's removal petition . . . constitutes the federal law under which the action against the federal officer arises for Art. III purposes." *Mesa v. California*, 489 U.S. 121, 136, 109 S. Ct. 959, 968 (1989). The Court has consistently urged courts to avoid "a narrow, grudging interpretation of § 1442(a)(1)." *Willingham*, 395 U.S. at 407, 89 S. Ct. at 1816; *Arizona v. Manypenny,* 451 U.S. 232, 242, 101 S. Ct. 1657, 1664 (1981); *Jefferson County v. Acker*, 527 U.S. 423, 431, 119 S. Ct. 2069, 2075 (1999).

Clearly, a defendant removing under section 1442(a)(1) must show (1) it is a "person" within the meaning of the statute, (2) it acted "pursuant to a federal officer's directions," and (3) it asserts a "colorable federal defense." *Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387, 396–400 (5th Cir. 1998). This court's cases have also required pleading (4) "a causal nexus" between the defendant's acts under color of federal office and the plaintiff's claims. *E.g.*, *id.* at 398. Avondale's status as a "person" and its federal contract with the Navy for repairs to the *Tappahannock* satisfy the first and second conditions. Whether any "causal nexus" was required is the focal point of dispute, but the parties also debate the "colorable federal defense" criterion.

4

No. 18-30652

## I.  The Connection Prong

The parties first join issue over the status of the "causal nexus" requirement.  This requirement began as a restatement of part of the Supreme Court's test in *Willingham*, in which the Court interpreted "for any act under color of such office," 28 U.S.C. § 1442(a) (1948), to limit federal officer removal to suits that "grow[] out of conduct under color of office."  395 U.S. at 407, 89 S. Ct. at 1816.  A civil suit "grows," the Court held, if the defendant's "acts or [his] presence at the place in performance of [his] official duty constitute the basis, though mistaken or false," of the plaintiff's action.  *Id.* at 407, 409, 1816, 1817.  To establish that much was to establish a "'causal connection' between the charged conduct and asserted official authority."  *Id.* at 409, 1817 (quoting *Maryland v. Soper*, 270 U.S. 9, 33, 46 S. Ct. 185, 190–91 (1926)).

Three decades later, in *Winters*, this court restated *Willingham*'s "under color of office" or "causal connection" test as providing "that the defendants acted pursuant to a federal officer's directions and that a causal nexus exists between the defendants' actions under color of federal office and the plaintiff's claims."  149 F.3d at 398.  In *Winters,* the defendant's formulation, packaging, and delivery of Agent Orange took place under direct governmental specification and supervision.  *Id.* at 400.  Consequently, the court determined that "a *direct* causal nexus exists between the defendants' actions taken under color of federal office and Winters's claims" for strict product liability and failure to provide adequate warnings.  *Id.* at 399–400 (emphasis added).  Notably, in applying *Willingham*'s color-of-office test, the *Winters* court asserted only that a "direct causal nexus" existed, not that it was necessary.

In this court's decisions following *Winters,* the "direct causal nexus" test became a talisman even after Congress, in 2011, amended section 1442(a), altering the requirement that a removable case be "for" any act under color of federal office and permitting removability of a case "for *or relating to*" such

5

No. 18-30652

acts, 28 U.S.C. § 1442(a) (2012) (emphasis added). Thus, in *Bartel v. Alcoa Steamship Co.*, the court accurately quoted the amended statute, but did not discuss the textual change and still applied a "direct causal nexus" test. 805 F.3d 169, 172–75 (5th Cir. 2015). Subsequent panels of this court relied on *Bartel* and attempted to discern what kinds of plaintiffs' claims articulated causes of action sufficiently related to federal officers or directions to satisfy the "direct causal nexus" test. *See Savoie*, 817 F.3d at 462–66; *Zeringue v. Crane Co.*, 846 F.3d 785, 793–94 (5th Cir. 2017); *Legendre*, 885 F.3d at 400–403; *see also IntegraNet Physician Res., Inc. v. Tex. Indep. Providers, L.L.C.*, 945 F.3d 232, 240[4] (5th Cir. 2019); *Schexnayder v. Huntington Ingalls, Inc.*, No. CV 19-11773, 2020 WL 114136, at *2 (E.D. La. Jan. 10, 2020). The original *Latiolais* panel highlighted the tension between the amended statute and our precedents. 918 F.3d at 408–10.

Unsurprisingly, Latiolais no longer relies on our case law alone and takes the position that, even as amended, section 1442(a) requires a direct causal nexus test. He contends that the added language applies to a narrow class of civil proceedings, not including this suit against Avondale; that the application of interpretive canons to the amended statute's language establishes the narrower interpretation; and that in any event the amendment cannot have been meant to dispense with all functional limitations on removal. Avondale asserts that the amendment broadened the availability of federal officer removal. Our analysis therefore turns to statutory interpretation. We conclude that Avondale has the better of the arguments.

---

[4] *But cf.* 945 F.3d at 238 n. 18 (stating that the "causal nexus" test is "not outcome determinative in this case").

No. 18-30652

## A.

The always primary, and here decisive, interpretive tool is the text itself. The amending legislation, the Removal Clarification Act of 2011, states, "Section 1442(a) of title 28, United States Code, is amended-- (1) in paragraph (1)-- (A) by striking 'capacity for' and inserting 'capacity, for or relating to'." Pub. L. No. 112-51, § 2(b)(1)(A), 125 Stat. 545. Following this amendment, section 1442(a) makes removable to federal court "[a] civil action . . . that is against or directed to . . . any person acting under [a federal] officer . . . for or relating to any act under color of such office."

This change plainly expresses that a civil action *relating to* an act under color of federal office may be removed (if the other statutory requirements are met). Further, the Supreme Court has recognized, "[t]he ordinary meaning of the[ ] words ['relating to'] is a broad one—'to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with.'" *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383, 112 S. Ct. 2031, 2037 (1992). Congress added this "broad" term to "for," the preposition relied on in the Supreme Court's discussion of the "causal connection" test, *Jefferson County*, 527 U.S. at 431–32, 119 S. Ct. at 2075. By the Removal Clarification Act, Congress broadened federal officer removal to actions, not just *causally* connected, but alternatively *connected* or *associated*, with acts under color of federal office.

Two other circuit courts have acknowledged the impact of the amendment and formally adopted a "connection" test. *See Sawyer v. Foster Wheeler, L.L.C.*, 860 F.3d 249, 258 (4th Cir. 2017); *In re Commonwealth's Mot. to Appoint Counsel Against or Directed to Defender Ass'n of Phila.,* 790 F.3d 457, 470–71 (3d Cir. 2015). The Eleventh Circuit, while persisting with the "causal connection" test, has cited the amended "relating to" language and

essentially implemented a connection rationale for removal. *Caver v. Cent. Ala. Elec. Coop.,* 845 F.3d 1135, 1144 & n.8 (11th Cir. 2017).

## B.

Against this perfectly natural interpretation, Latiolais sets a creative alternative. He contends that "for" and "relating to" modify different "civil action[s] or criminal prosecution[s]." To support this counterintuitive proposal, Latiolais emphasizes a subsection title in the Removal Clarification Act. He deploys the canon against surplusage. He insists that the plain-meaning interpretation would be a radical, implicit change in law. And he deplores the consequences for courts and plaintiffs if the amendment permits wholesale removal of actions to the federal courts. We must address each of these arguments.[5]

Latiolais stresses a construction of the Removal Clarification Act, which amended section 1442 in 2011. The provision inserting "or relating to" into section 1442(a)(1) is part of a subsection entitled "Conforming Amendments." § 2(b), 125 Stat. at 545. According to Latiolais, "relating to" must "conform" to the Act's immediately preceding subsection, which "clarifies" that standalone subpoenas and other discovery matters are to be defined among the "civil action[s] or criminal prosecution[s]" that may be removed.[6] Because the insertion of "relating to" conforms to that "clarification," the amended section

---

[5] Latiolais also presents a mélange of legislative history for consideration, but such history is to be avoided in statutory interpretation. Antonin Scalia & Bryan A. Garner, *Reading Law* 31–33, 56–58, 369–90 (2012).

[6] In the "Clarification," Congress broadened the definition of removable proceedings as follows: "As used in subsection (a), the terms 'civil action' and 'criminal prosecution' include any proceeding (whether or not ancillary to another proceeding) to the extent that in such proceeding a judicial order, including a subpoena for testimony or documents, is sought or issued. If removal is sought for a proceeding described in the previous sentence, and there is no other basis for removal, only that proceeding may be removed to the district court." § 2(a)(2), 125 Stat. at 545 (codified as amended at 28 U.S.C. § 1442(d)(1) (2018)).

1442(a) means that only "pre-suit discovery matters" "relating to" an act under color of federal office are removable.  Every other "civil action or criminal prosecution" that is not a pre-suit discovery matter, however, is removable only if it is "for" an act under color of federal office.  The amendments, taken together, effectuate broader removability for pre-suit discovery matters, while the removal of liability suits or prosecutions remains in thrall to the direct causal nexus test.

For several reasons, this alternative interpretation based on "Conforming Amendments" is untenable.  First, an act's subsection title cannot defeat the ordinary meaning of the statutory text it amends.  Reading the language inserted into section 1442(a) via the Conforming Amendments yields that any "civil action or criminal prosecution [more broadly defined to include pre-suit discovery matters]" that otherwise meets the statutory requirements may be removed if it "relates to" an act under color of federal office.  Any subsection title with contrary meaning would be unavailing because, in a war between text and title, text wins.  Scalia & Garner, *supra*, at 222–23.

Moreover, the relevant title is not contrary to the statutory changes communicated in the text.  One "clarifying" subsection of the Removal Clarification Act broadened the types of proceedings that are removable, no longer limiting removal to liability suits or criminal prosecutions against covered persons.  § 2(a)(2), 125 Stat. at 545.  The "conforming" subsection broadened the universe of acts that enable federal officers to remove. § 2(b)(1)(A), 125 Stat. at 545.  Establishing a broader class of removable acts in section 2(b) conforms to establishing a broader class of removable proceedings in section 2(a).

Ultimately, Latiolais's exegesis of the Removal Clarification Act and thus of section 1442(a) depends on the possibility of distinguishing pre-suit discovery matters from other proceedings.  The text does not justify this

No. 18-30652

distinction. Instead, the amendment simply broadens the scope of removable proceedings. Had Congress sought to afford easier removability for pre-suit discovery matters than lawsuits, it could easily have drafted an entirely new provision in section 1442 to address the narrow category of state judicial orders of the type currently contemplated in section 1442(d). Instead, within section 1442, Congress both broadened the definition of "civil action" to include such orders and chose to add "relating to"—a term well known for its breadth. These changes neither signal ambiguity nor artificially limit the plain meaning of the provision. *See Advocate Health Care Network v. Stapleton*, 137 S. Ct. 1652, 1659 (2017) ("When legislators did not adopt 'obvious alternative' language, 'the natural implication is that they did not intend' the alternative." (quoting *Lozano v. Montoya Alvarez*, 572 U.S. 1, 16, 134 S. Ct. 1224, 1235 (2014)).

Latiolais's next thrust concerns the word "for," which remains in section 1442(a)(1). According to Latiolais, if "relating to" modifies "[a] civil action or criminal prosecution" without qualification, then "for" is superfluous, in violation of the interpretive canon against surplusage, *cf. Corley v. United States*, 556 U.S. 303, 314, 129 S. Ct. 1558, 1566 (2009) ("[O]ne of the most basic interpretive canons [is] that '[a] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant.'" (quoting *Hibbs v. Winn,* 542 U.S. 88, 101, 124 S. Ct. 2276, 2286 (2004)). Accordingly, "relating to" must apply only to a subclass of "civil action or criminal prosecution."

This reading is also unpersuasive. To start, the canon against surplusage yields to context as it expresses courts' "*general* 'reluctan[ce] to treat statutory terms as surplusage.'" *Bd. of Trs. of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.*, 563 U.S. 776, 788, 131 S. Ct. 2188, 2196 (2011) (alteration in original) (emphasis added) (quoting *Duncan v. Walker,* 533 U.S. 167, 174, 121 S. Ct. 2120, 2125 (2001)). Congress may in fact use "a

10

perhaps regrettable but not uncommon sort of lawyerly iteration" in which each word of a series means nearly the same thing. *Freeman v. Quicken Loans, Inc.*, 566 U.S. 624, 635, 132 S. Ct. 2034, 2043 (2012). If the meaning of a text is discernibly redundant, courts should not invent new meaning to avoid superfluity at all costs.

Anyway, such invention would be inappropriate in this case because "for" is not redundant. Instead, by keeping "for," Congress left no doubt that cases previously removable under the Federal Officer Removal Statute remained removable even as Congress broadened the universe of acts that could sustain removability. *Cf. Ali v. Fed. Bureau of Prisons,* 552 U.S. 214, 226, 128 S. Ct. 831, 840 (2008) ("The construction we adopt today does not render 'any officer of customs or excise' superfluous; Congress may have simply intended to remove any doubt that officers of customs or excise were included in 'law enforcement officer[s].'"). Lacking superfluity, section 1442(a)(1) leaves no work for the canon against surplusage to do.

Latiolais advances another interpretive doctrine, asserting that, should "or relating to" achieve broader removability of civil suits and criminal prosecutions, it would "make radical—but entirely implicit—changes through technical and conforming amendments," which Congress does not do. *Cyan, Inc. v. Beaver Cty. Emps. Ret. Fund*, 138 S. Ct. 1061, 1071 (2018). In fact, the revision of section 1442(a)(1) was neither radical nor implicit.

Permitting removal of all acts "relating to" an act under color of federal office that meet the other requirements of removal did not radically change the Federal Officer Removal Statute. Congress had consistently broadened the statute before 2011.[7]   *See Watson*, 551 U.S. at 147–49, 127 S. Ct. at 2305;

---

[7] Indeed, after 2011, Congress continued to broaden section 1442 by amending 28 U.S.C. § 1442(c), National Defense Authorization Act for Fiscal Year 2013, Pub. L. No. 112-239, § 1087, 126 Stat. 1632, 1970–71.

No. 18-30652

28 U.S.C.A. § 1442 (West). In *Willingham* and *Acker*, the Supreme Court had read the amended statute to require only a minimal "causal connection." 395 U.S. at 409, 89 S. Ct. at 1817; 527 U.S. at 432–33, 119 S. Ct. at 2075–76. Given this series of events, moving from the causal connection test under "for" to a connection test under "for or relating to" was not a radical change.[8]

Nor was the change "entirely implicit." The *Cyan* case is inapposite. In *Cyan*, a defendant sought dismissal of a 1933 Securities Act class action from state court, contending that a definition in a subpart of a statutory section referenced by a newly added exception required removal. *See* 138 S. Ct. at 1068–70. The Supreme Court rejected the argument that the alleged change, discernible only implicitly, had, for the first time, required removal of 1933 Act claims. *Id.* at 1071–72. In this case, by contrast, Congress changed the operative statutory text, inserting into a phrase identified as the source of the causal connection test a term that is broad in ordinary and legal usage. If not preached on the housetops, this explicit change was far from just whispered in the ear.

Rather than *Cyan*, the better analogue to this case is *Burgess v. United States*. In 1994, Congress used a "conforming amendment" to define "felony drug offense" in the Controlled Substances Act ("CSA"). 553 U.S. 124, 134–35. 128 S. Ct. 1572, 1579 (2008). *Burgess* interpreted this conforming amendment

---

[8] If any further confirmation of this point were necessary, it is available in various decisions by circuit courts that still seek a causal connection between action and act. In part because these courts interpret the "causal nexus" or "causal connection" requirement more expansively—and more in line with *Willingham*, 395 U.S. at 409, 89 S. Ct. at 1817, and *Soper*, 270 U.S. at 33, 46 S. Ct. at 190–91—than our court has done in recent cases, the outcomes in these cases have not been affected by failure to give effect to the new "relating to" language in section 1442(a). *See Betzner v. Boeing Co.*, 910 F.3d 1010, 1015 (7th Cir. 2018); *Ruppel v. CBS Corp.*, 701 F.3d 1176, 1179, 1181 (7th Cir. 2012); *Jacks v. Meridian Res. Co.*, 701 F.3d 1224, 1230 & n. 3 (8th Cir. 2012); *see also Bennett v. MIS Corp.*, 607 F.3d 1076, 1088 (6th Cir. 2010). *Compare Cabalce v. Thomas E. Blanchard & Assocs.*, 797 F.3d 720, 727–30 (9th Cir. 2015), *with Goncalves ex rel. Goncalves v. Rady Children's Hosp. San Diego*, 865 F.3d 1237, 1244–45 (9th Cir. 2017).

to have broadened the universe of acts that require a judge to impose a sentence enhancement under the CSA. *See id.* at 129, 1577. The Court noted that "Congress did not disavow any intent to make substantive changes; rather, the amendments were 'conforming' because they harmonized sentencing provisions in the CSA and the Controlled Substances Import and Export Act." *Id.* at 135, 1579. Likewise here, Congress did not disavow any intent to make substantive changes, and its "conforming amendment" harmonized the scope of removal-causing acts with the scope of removable proceedings. Latiolais's text-focused arguments fail.

Latiolais caps his argument with the policy-related complaints that a plain reading of "relating to" enables removal of cases in a way that conflicts with past case law and suffuses indeterminacy in place of "workable standards" based on a "federal interest" in removal. Latiolais, however, articulates nothing about how to expound such a "federal interest." Moreover, if the causal connection test had provided such "workable standards," this court would have had clearer decisions. Finally, the statute's requirement that a removing party assert a colorable federal defense remains a constitutional, viable, and significant limitation on removability. *See Mesa*, 489 U.S. at 136–37, 109 S. Ct. at 968–69; *see generally* Anthony J. Bellia, Jr., *The Origins of Article III "Arising Under" Jurisdiction,* 57 Duke L.J. 263 (2007).

## C.

For all these reasons, Latiolais's interpretation falls to the more natural reading that Congress applied "relating to" to all "civil action[s] or criminal prosecutions" without distinction. Subject to the other requirements of section 1442(a), any civil action that is connected or associated with an act under color of federal office may be removed. Accordingly, we overrule *Bartel* and its

progeny[9] to the extent that those cases erroneously relied on a "causal nexus" test after Congress amended section 1442(a) to add "relating to." Henceforth, to remove under section 1442(a), a defendant must show (1) it has asserted a colorable federal defense, (2) it is a "person" within the meaning of the statute, (3) that has acted pursuant to a federal officer's directions, and (4) the charged conduct is connected or associated with an act pursuant to a federal officer's directions.

In addition, the pleadings here satisfy the "connection" condition of removal. Latiolais alleges that Avondale failed to warn him of the dangers of asbestos and failed to take measures to prevent exposure. This negligence is connected with the installation of asbestos during the refurbishment of the USS *Tappahannock*. Avondale performed the refurbishment and, allegedly, the installation of asbestos pursuant to directions of the U.S. Navy. Thus, this civil action relates to an act under color of federal office.

## II. Colorable Federal Defense

The remaining issue of law is whether Avondale asserted a colorable federal defense to Latiolais's claim. *See, e.g., Bell v. Thornburg*, 743 F.3d 84, 89–91 (5th Cir. 2014). It was briefed, but not decided, in the district court, and we may reach the issue as a matter of discretion. *See Singleton v. Wulff*, 428 U.S. 106, 121, 96 S. Ct. 2868, 2877 (1976); *see also Pinney Dock & Transp. Co. v. Penn Cent. Corp.*, 838 F.2d 1445, 1461 (6th Cir. 1988) ("[T]o the extent the issue is presented with sufficient clarity and completeness and its

---

[9] *IntegraNet Physician Res., Inc. v. Tex. Indep. Providers, L.L.C.*, 945 F.3d 232 (5th Cir. 2019); *Legendre v. Huntington Ingalls, Inc.*, 885 F.3d 398 (5th Cir. 2018); *Zeringue v. Crane Co.*, 846 F.3d 785 (5th Cir. 2017); *Savoie v. Huntington Ingalls, Inc.*, 817 F.3d 457 (5th Cir. 2016).

resolution will materially advance the progress of this already protracted litigation, we should address it.").

To be "colorable," the asserted federal defense need not be "clearly sustainable," as section 1442 does not require a federal official or person acting under him "to 'win his case before he can have it removed.'" *Jefferson County*, 527 U.S. at 431, 119 S. Ct. at 2075 (quoting *Willingham*, 395 U.S. at 407, 89 S. Ct. at 1816). Instead, an asserted federal defense is colorable unless it is "immaterial and made solely for the purpose of obtaining jurisdiction" or "wholly insubstantial and frivolous." *See Zeringue*, 846 F.3d at 790; *see also Bell*, 743 F.3d at 89–91 (deeming an asserted federal defense colorable simply because it satisfied the "causal connection" requirement). Certainly, if a defense is plausible, it is colorable. *Compare Ashcroft v. Iqbal*, 556 U.S. 662, 678–79, 129 S. Ct. 1937, 1949–50 (2009) (plausible claim survives a motion to dismiss), *with Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89, 118 S. Ct. 1003, 1010 (1998) ("It is firmly established in our cases that the absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction."), *and Montana-Dakota Utils Co. v. Nw. Pub. Serv. Co.*, 341 U.S. 246, 249, 71 S. Ct. 692, 694 (1951) ("If the complaint raises a federal question, the mere claim confers power to decide that it has no merit, as well as to decide that it has.").[10]

In this case, Avondale asserts the federal defense outlined in *Boyle v. United Technologies Corp.*, 487 U.S. 500, 108 S. Ct. 2510 (1988). This defense

---

[10] It may well be that courts, "in resolving a motion to remand, should first ask if the defendant offers a colorable federal defense." *See Legendre*, 885 F.3d at 405 (Higginbotham, J., concurring). Still, in doing so, courts must avoid premature merits determination. *See id.* Thus, even if a federal defense makes "sharp demands," *id.*, a court should not base removal on whether the defendant actually meets those demands. Only a colorable assertion of the federal defense is necessary.

extends to federal contractors an immunity enjoyed by the federal government in the performance of discretionary actions. *Zeringue*, 846 F.3d at 790.[11] Accordingly, federal contractors are not liable for design defects if "(1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." *Boyle*, 487 U.S. at 512, 108 S. Ct. at 2510 (quoted in *Zeringue*, 846 F.3d at 790). Furthermore, "the government contractor defense does not necessarily apply only to claims labeled 'design defect.'" *Bailey v. McDonnell Douglas Corp.*, 989 F.2d 794, 801 (5th Cir. 1993). Instead, "[w]hether it will apply to a particular claim depends *only* upon whether *Boyle*'s three conditions are met with respect to the *particular product feature* upon which the claim is based." *Id.* at 801–02.

In this case, Avondale offered evidence that the three *Boyle* conditions are met. First, Avondale submitted one affidavit and deposition testimony alleging that the Navy required installation of asbestos on the *Tappahannock*, as well as another affidavit alleging that the Navy generally required Avondale to install asbestos and to comply with certain related safety practices. These documents make colorable that the government approved reasonably precise specifications about the installation of asbestos. Second, Latiolais does not challenge that Avondale complied with those specifications, if they existed. Indeed, Latiolais himself testified that Avondale used asbestos in refurbishing the *Tappahannock*. Third, Avondale's evidence tends to support that the federal government knew more than Avondale knew about asbestos-related

---

[11] As the *Boyle* Court explained, "[i]t makes little sense to insulate the Government against financial liability for the judgment that a particular feature of military equipment is necessary when the Government produces the equipment itself, but not when it contracts for the production." 487 U.S. at 512, 108 S. Ct. at 2510 (quoted in *Zeringue*, 846 F.3d at 790).

hazards and related safety measures.  From such evidence, it is colorable that Avondale did not omit warning the government about any dangers about which the government did not know.

In light of the evidence submitted, Avondale's assertion of a federal defense is not wholly insubstantial and frivolous.  We, of course, do not speculate on what further evidence may come to light as the case proceeds and conclude only that Avondale has a colorable federal defense.

## CONCLUSION

As the foregoing discussion demonstrates, this action meets the conditions for removal under section 1442(a).  The district court's remand order is VACATED, and we REMAND for further proceedings in federal court.